I7D3ORES                        Sentence

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                            17 CR 243 (SHS)

5    THOMAS O'REILLY,

6                   Defendant.

7    ------------------------------x

8                                            New York, N.Y.
                                             July 13, 2018
9                                            11:30 a.m.

10
     Before:
11
                        HON. SIDNEY H. STEIN,
12
                                             District Judge
13

14                            APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     ROBERT B. SOBELMAN
17        Assistant United States Attorney

18   THE HENRY LAW FIRM, PLLC
          Attorneys for Defendant
19   BRADLEY L. HENRY

20

21

22

23

24

25

I7D3ORES                    Sentence

1              (In open court; case called)

2              MR. SOBELMAN:  Robert Sobelman for the United States,

3    Good morning, your Honor.

4              THE COURT:  Good morning, sir.

5              MR. HENRY:  Brad Henry for Mr. O'Reilly who is

6    standing to my left.  Also standing is Andrea Smithson, who is

7    an extern at my office from Brooklyn Law School.

8              THE COURT:  Welcome.  Please be seated.

9              We're here for the sentencing of Mr. O'Reilly.  I have

10   the presentence investigation report prepared on April 19 of

11   this year and revised on May 14, along with the sentencing

12   recommendation of 366 days and the addendum.

13             In addition, I have the sentencing memorandum on

14   behalf of Mr. O'Reilly.  It says submitted on the 22nd day of

15   June, 2017, but that doesn't make any sense because it is 2018,

16   and it's document 207 filed on June 19, 2018.

17             I also have the letter of the government dated

18   June 21, submitted in connection with the sentencing.  It's ECF

19   document 208.

20             I also have reviewed the victim impact statements that

21   have been presented to me.

22             Mr. Henry, have you and your client had an opportunity

23   to review all that information, including the victim impact

24   statements?

25             MR. HENRY:  Yes, your Honor.

I7D3ORES                        Sentence

1          THE COURT:  Have you in fact read and reviewed it with

2    your client?

3          MR. HENRY:  Yes, your Honor.

4          THE COURT:  Do either of you have any objections to

5    the findings of fact in the presentence report?

6          MR. HENRY:  No, your Honor.

7          THE COURT:  Mr. Sobelman, do you have any objections

8    to the findings of fact in the presentence report?

9          MR. SOBELMAN:  No, your Honor.

10          THE COURT:  I'm going to return this information to

11    the probation department.

12          Mr. Henry, speak to me, sir.

13          MR. HENRY:  Thank you, your Honor.  Your Honor, I

14    won't belabor the point too much.  We filed the sentencing

15    memorandum in this case asking for time served for

16    Mr. O'Reilly.

17          THE COURT:  You're not going to get it.  Go ahead.

18          MR. HENRY:  The Court is aware of a bit of the history

19    of Mr. O'Reilly because we have visited with you previously.

20    Mr. O'Reilly is a heroin addict.

21          THE COURT:  Yes.  And we've had this discussion.  And

22    it's just a shame.  The man up until now is -- I won't say he's

23    tossing his life away, because I think that's an unfair

24    overstatement.  But I just don't understand what he's doing or

25    why he was doing it.

1          He's had so many run-ins with the law.  This is the

2     first substantial time incarcerated.  He's young.  He can't

3     keep a job.  He's involved in all of these prior arrests.  He

4     ends up working for a very short time for this fraud, and

5     assists them.  I assume he knew what he was getting into.  He

6     certainly said he understood it was wrong and illegal.  He's

7     only there for, what, seven months or something, and people are

8     arrested, and he helps destroy evidence.

9          I think I said this the last time when I remanded him.

10    He seems to have lost his moral compass.  I just can't figure

11    it out.  The papers say he went in a downhill spiral when his

12    parents got divorced.  I understand how that can be a real

13    blow, and present significant problems to a young man.  I think

14    he was 15 at the time.  But, you can't let that fact, which

15    can't be changed, ruin your life.  So I don't understand what

16    he's doing.

17         MR. HENRY:  I think a couple of issues, your Honor, if

18    I may.  You're right.  I would respectfully disagree with the

19    Court that Mr. O'Reilly has lost his moral compass.  He has

20    certainly lost his way.  There is no doubt about that.  But

21    when Mr. O'Reilly is engaged and talking and doing the things

22    that he is supposed to be doing right, and not making poor

23    decisions based on his drug addiction, he knows I think pretty

24    clearly the difference between right and wrong and wants to do

25    the right thing.

I7D3ORES                          Sentence

1              And I think the Court addressed the divorce of his

2      parents, which you know rightly has an impact on all children

3      probably to one degree or another.  It's very difficult to say

4      what particular impact that would have on one person to another

5      because it's based on so many factors.

6              THE COURT:  I understand that.

7              MR. HENRY:  The other thing that Mr. O'Reilly went

8      through, right, was his military service for which he was

9      honorably discharged based on what they called mental health

10     issues, but really what that boils down to is Mr. O'Reilly was

11     the victim of pretty significant abuse during his time in the

12     military, some of which was sexual.  We haven't delved into

13     that really too deeply I think because it's not a subject

14     obviously that is easy for him to discuss or talk about.

15             But that in combination with some of the issues he had

16     as a younger man have really put him in a pretty delicate

17     state.  He got hooked on heroin to compensate for some of those

18     issues that he was having, and he has just had a tremendously

19     difficult time kicking the habit.

20             I think if the Court looks at his criminal run-ins,

21     minor or not, in his past, and this case, it is clear to me,

22     and I hope clear to the Court, that the vast majority of those,

23     if not all of them, revolve directly around the use of drugs.

24             THE COURT:  I agree.  I don't think there is any doubt

25     about that.

I7D3ORES                        Sentence

1          MR. HENRY:  So, for Mr. O'Reilly, I think we had him

2     in a situation earlier which is why I started to talk about

3     this where he was in a drug rehabilitation program and he was

4     kicked out.  But let's put that in perspective a bit.

5     Mr. O'Reilly was not kicked out of that program because he

6     relapsed in the use of drugs.  He was kicked out of the program

7     because he was smoking in the bathroom and breaking other

8     rules, which really probably you could classify as infractions,

9     although he wasn't supposed to be doing them and he knows that.

10    But to keep focused and our eye on the ball --

11         THE COURT:  He has a criminal history category of III.

12    The way the guidelines work, that's where he ends up.  That may

13    somewhat overstate the seriousness of the criminal history.  I

14    don't think it really does.  Certainly nothing that would

15    justify a horizontal departure, nor are you asking for that.

16    But my point here is you get arrested for this, you get

17    arrested for that, and then for this again.

18         MR. HENRY:  It piles up.

19         THE COURT:  You end up with a significant criminal

20    history in the federal criminal justice system.

21         MR. HENRY:  That's true, your Honor.  But I think at

22    this point, as Mr. O'Reilly sits here today, he's been in

23    custody for I think just a few days short of five months if you

24    include the 11 days he initially went in before he was allowed

25    to go out into the drug program, and then his remand in early

March, we're about five months into his sentence as we sit here

today.  Which for, you know, regardless of the priors that he

has, is a significant amount of time for a person who hasn't

spent a significant amount of time in jail previously.

             THE COURT:  Maybe that's what he needs.

             MR. HENRY:  I think certainly he needed some time.  I

think these five months have probably been very good for him,

if for no other reason than he's been sober for five months.

             THE COURT:  Yes, but you know as well as I, and I'm

sure he knows, that sure, he's not taking drugs, but the issue

is what happens when he gets out of that confined situation and

goes back to his old way of living.  That's --

             MR. HENRY:  I think when you look --

             THE COURT:  -- when it becomes difficult.

             MR. HENRY:  I agree with that.  I think when you look

at the purposes of sentencing, right, we get really down to the

baseline, and my reading of it and in my experience is that one

of the things you have to look at obviously is the punitive

nature of the sentence involved.  You've got to punish the

person for the wrongs they did, and I think Mr. O'Reilly has

certainly been punished.  Five months in prison is nothing to

laugh at.  It is certainly not what we would consider a hefty

sentence compared to what we deal with in these courts very

often.  For him, that's a significant sentence, particularly

for a low-level participant in the crime and someone who, while

I7D3ORES                        Sentence

he destroyed documents, did so at the direction of his

superior.  He could have made the decision not to.  But, we're

here because he didn't.

         But the other part of sentencing that you have to look

at, and what the evidence proves out and what the studies have

shown time and again and what the sentencing commission has

meetings on continually about and Congress is discussing, is

that when a person is motivated to commit crime because of a

drug addiction, that the most beneficial and useful thing you

could do for that person is to at least try to control and/or

fix that drug addiction.

         And a couple of things, your Honor.  Sending him to

prison from here on out he's going to get zero drug treatment.

You have to have -- previously it was 24 months.  I think this

number has gone up now.  But a longer period of time than 24

months left to serve before you get the RDAP program.  They're

not going to put him in the program, number one, because he's

not going to get the credit for it, and they're going to put

people in there who will get credit, and there's a significant

waiting list for that.

         THE COURT:  He is not eligible for RDAP and I'm not

recommending it.  You're not asking for it.  So why are you

raising that point?

         MR. HENRY:  Because he's not going to get drug

treatment in jail.

1            THE COURT:  He won't get intensive drug treatment.

2            MR. HENRY:  There is no drug treatment.  That's pretty

3    clear.

4            THE COURT:  Okay.

5            MR. HENRY:  He is going to be punished.  That is it.

6    The most productive thing I think we can do for Mr. O'Reilly,

7    and I am not asking for a time served sentence because I need

8    the Court to be lenient on him.  Obviously it is my job to

9    advocate for my client.  But really, as just a scientific

10   matter and a matter that's backed up by sentencing studies, by

11   partisan and nonpartisan alike, is that drug treatment works.

12   Drug treatment reduces recidivism.  Drug treatment reduces

13   danger to the community.  Drug treatment addresses those 3553

14   factors that the Court has to think about and attempts at least

15   to get this person on the right track.  Getting him back in the

16   community, ties to his family, which have reached out to me, I

17   have had communication from them.  They are obviously very

18   concerned about his drug treatment, they are frankly having a

19   hard time with his drug issue and have for many years.  But

20   they, his father in particular is confident that with the right

21   help, he can be a productive member of society.  And I support

22   that view, just based on my interactions with Mr. O'Reilly.

23           I know the Court has never had a conversation with

24   him.  And the government may not have had -- this particular

25   U.S. attorney may not have had discussions with him.  But in

I7D3ORES                        Sentence

1    his day-to-day, he is an intelligent young man.  He hasn't used

2    it the way he should have.

3               THE COURT:  He washed out of college because of his

4    drug addiction.

5               MR. HENRY:  That's right.

6               THE COURT:  Not because of any lack of intelligence.

7               MR. HENRY:  He went to a great high school.  Bergen

8    Catholic is a wonderful school.  He graduated and did quite

9    well and played sports.  By all other standards other than his

10   drug addiction, was on the path to doing really good things.

11   He has been significantly derailed.

12              THE COURT:  How old is he now?

13              MR. HENRY:  33 years old, your Honor.

14              THE COURT:  Time to shape up.

15              MR. HENRY:  It's time to shape up.  I would agree with

16   that.  I think Mr. O'Reilly would absolutely agree with you.

17   And I think he would sit here and look you in the eye and tell

18   you he gets it.  Next time he shows up in this court, if he

19   does, we're not going to be having this discussion.  He will go

20   to jail and he will go for a very long time.  And I don't think

21   he wants to do that.  That's assuming if he gets out and

22   doesn't kick his heroin habit and die from it, which many

23   people do every day.

24              On the bright side of things, Mr. O'Reilly has avoided

25   other crimes, drug dealing and drug selling and all other kinds

1   of ridiculous things.  He's never been violent.

2          THE COURT:  I don't think he has dependents.  Is that

3   correct?

4          MR. HENRY:  No, he does not.

5          THE COURT:  That's an advantage also in these types of

6   situations.

7          MR. HENRY:  He can focus on himself.

8          THE COURT:  He doesn't have the need to support other

9   people.

10          MR. HENRY:  Your Honor, I think that it is a fairly

11   substantial variance that we're requesting, something like

12   half.  But in these cases, particularly in his case, where he

13   has the ability to do it, if he will just do it.  He needs the

14   opportunity to go out and have the opportunity to stay drug

15   free.  Now is the time to strike when he has been sober for

16   many months, when he has this in his mind.

17          THE COURT:  I understand your point.  Why haven't we

18   talked at all about the crime itself.  Those victim impact

19   statements are quite --

20          MR. HENRY:  The victim impact statements are horrible.

21   But if you read the PSR, it says those victim impact statements

22   have nothing to do with Mr. O'Reilly, because he was not

23   charged in the fraud itself.  The PSR addresses that.  He was

24   charged and has admitted to the destruction of documents.  He

25   worked at that company, and did what he did.  And the

I7D3ORES                    Sentence

1    government saw fit not to charge him with that offense and to

2    charge him with what they did charge him with.

3          Reasonable minds could go both ways on that, I think,

4    and Mr. Sobelman will probably tell you that they if they had

5    chosen to, they could have charged him with that.

6          The fact of the matter is he stands before this Court

7    not being charged with that and/or having admitted to that.

8    And we have to think about for Mr. O'Reilly, even if he was

9    involved in some of the fraud, even if you are assuming that,

10   which I think it's wrong to do, that he was not a leader or

11   organizer.  He was not the person who came up with this crime.

12          THE COURT:  No, I agree, he wasn't.

13          MR. HENRY:  He was not a high-level individual.  He

14   was acting at the discretion and the direction of others who,

15   frankly, had threatened him in the past.  We could get into all

16   that.  We just haven't because it was not part of the charged

17   offense for which he pled guilty to.

18          THE COURT:  All right.  Thank you.  I understand your

19   point.  Your position.

20          MR. HENRY:  What he did do, and what he has admitted

21   to, is destroying evidence.  That is wrong.  Period.  And doing

22   it after he found out that other individuals had been arrested.

23   He gets that.

24          Alternatively, taking that into perspective, it's a

25   crime for which he can be rehabilitated from.  It is a crime

1    for which he was motived by his drug addiction to be involved

2    in.  Getting involved with these guys who are, for lack of a

3    better word, no good, that's poor decision-making.  Right.  And

4    something that, thankfully, is something that can be fixed with

5    the proper treatment and the proper followup.  And this Court

6    has an opportunity to make sure he does that, right, both

7    through -- you don't give him time served.  If you

8    alternatively sentenced him to a probationary period of time.

9    You can keep your thumb on Mr. O'Reilly.  If he screws it up,

10   he goes to jail.  If you give him time served, he will still be

11   on supervised release.  Likewise, if he screws up, he goes to

12   jail.

13           It is a period of time in which it's not too long that

14   he is so removed from the community that his chances of

15   recidivism go up, or he can still get drug treatment, where the

16   Court can keep supervision over him, and where he can have the

17   appropriate rules and responsibilities placed on him.  And if

18   he follows them, then he's done exactly what we wanted him to

19   do and potentially can come out of this tailspin that he's in.

20   If he doesn't do it, then the Court can drop the hammer and

21   rightfully so.  And Mr. O'Reilly can go and serve the amount of

22   time that's appropriate for punishment purposes.

23           I think there is a happy medium between simply putting

24   him in prison, and just turning him loose with nothing over his

25   head.  But he needs to learn that responsibility, and I think

I7D3ORES                          Sentence

1   alternative sentencing in this particular case is a good way to

2   do that.

3           THE COURT:  Thank you.

4           MR. HENRY:  Thank you.

5           THE COURT:  Mr. O'Reilly, do you wish to address the

6   Court?  You don't have to, sir, but you have the right to do

7   so.  Anything you say can be used against you.  But I'm here to

8   listen to anything you want to say.

9           I should also add I am adopting the findings of fact

10  in the presentence report.

11          Yes, sir.

12          THE DEFENDANT:  Good morning, your Honor.

13          THE COURT:  Good morning.

14          THE DEFENDANT:  First off, I'd like to apologize to

15  the Court, to the U.S. attorney and everyone for -- I know my

16  actions were wrong.  This is the first time in 11 years that

17  I've had seven months clean.  And I just want to get on with my

18  life.  I've shortchanged myself so many times, like you've

19  said, I've had so many opportunities.

20          I had no idea where OxyContin would lead me.  Excuse

21  me.  I just, I had no idea the road it would bring me down, the

22  choices I would make, and where I would stand today.

23          I just want to move on with my life in a positive

24  manner.  My best friend just had a baby Monday, my sister got

25  married a month ago.  I've been away from them for the longest

I7D3ORES                        Sentence

1    period of time I've ever been away from family and friends.

2            I need supervision.  I need treatment.  I'm asking for

3    it.  There's things I need to deal with.  The five months I've

4    spent at MDC I've spent working in the kitchen.  I've had no

5    write ups, I've done what I'm supposed to, and I would just

6    appreciate the chance to move on in a positive with way with my

7    life, your Honor.  That's all I have to say.

8            THE COURT:  Thank you, sir.

9            THE DEFENDANT:  Thank you, your Honor.

10           THE COURT:  Government?

11           MR. SOBELMAN:  Very briefly, I want to respond to a

12   couple points defense counsel made.

13           First, the characterization of Mr. O'Reilly as a

14   low-level participant in the fraud that underlying the

15   obstruction, the government disagrees with that.  Certainly he

16   was not a leader, organizer, manager.

17           THE COURT:  He was only there seven months, if I am

18   not mistaken.

19           MR. SOBELMAN:  Yes.  Working 40-plus hours a week

20   every day of the week, calling mostly older people, trying to

21   sell them, quote unquote, on --

22           THE COURT:  Do you have evidence?  He didn't plead to

23   that.

24           MR. SOBELMAN:  That's correct, your Honor.

25           THE COURT:  Do you have evidence he was a caller?

I7D3ORES                        Sentence

1          MR. SOBELMAN:  Yes, your Honor.  We would be able to

2    put on evidence if there was a dispute about that -- I think

3    there is none -- that he was a kind of a line salesperson in

4    the fraud.

5          There were obviously discussions between

6    Mr. O'Reilly's counsel and the government in shaping the charge

7    to which he pled and certainly he should be held accountable

8    for that charge.  But, the Court should and can consider the

9    other relevant conduct and the context in which the offense

10   conduct specifically to which he pled occurred.

11         In addition, the victim impact statements I think

12   should be and are properly before the Court.  It's not clear to

13   the government that these particular victims are linked to

14   Mr. O'Reilly's individual conduct.  I want to make sure that's

15   clear.  That's not what the government is alleging.  We've been

16   unable to make that exact link.

17         THE COURT:  No, they used fake names.

18         MR. SOBELMAN:  That's exactly what I was about to

19   point out is that they used fake names.

20         THE COURT:  In fact, some of these letters say I know

21   it was a fake name.

22         MR. SOBELMAN:  Yes, your Honor.  But, the government's

23   view in reviewing these letters is, and having interviewed

24   dozens of victims of this scheme is these are representative of

25   the impact that the scheme has had on the lives of hundreds of

1    individuals throughout the country.

2            With respect to Mr. O'Reilly's addiction and his need

3    for drug treatment, the government vigorously agrees that he

4    does need drug treatment and he does have a very serious drug

5    addiction problem.  The government's view is that's

6    unfortunately an aggravating factor for Mr. O'Reilly rather

7    than a mitigating one.  It means his chances of success once

8    released may be lower than someone that doesn't have that

9    addiction to contend with.

10           THE COURT:  That may be.  But you have to make the

11   argument that a longer term in prison is more likely to help

12   overcome that addiction than a shorter term.

13           MR. SOBELMAN:  And the government thinks that it does.

14   With respect to whether a longer or shorter term will affect

15   whether or not he gets drug treatment, he'll receive whatever

16   drug treatment he will receive on supervised release, whether

17   he is released today or he is released a year from now.  He'll

18   have that same support once he is released and on supervised

19   release.

20           THE COURT:  Doesn't that speak to the defense's point

21   that he doesn't have the drug treatment now?  I don't know what

22   drug treatment's available in the MCC, certainly not the RDAP

23   program.  And therefore a shorter term gets him into drug

24   treatment sooner.

25           MR. SOBELMAN:  No, your Honor.  While he is

 1    incarcerated, he obviously can't and is not using drugs.  It

 2    keeps him clean.  The government's not sure what at MDC or MCC

 3    the drug treatment options are.  It may be he is designated

 4    once he is sentenced today to another facility, depending on

 5    the length of the sentence, that does have additional options

 6    as many of the incarceratory facilities have as opposed to the

 7    detention facilities.

 8            But regardless of that, the government laid out in its

 9    submission a number of reason why is Mr. O'Reilly's sentence

10    should be within the guidelines range.  Those include the fact

11    that this is a very serious offense, that he's not been held

12    accountable fully throughout his criminal history over the past

13    10 years, and needs to have a sentence that reflects his status

14    as someone who has committed many crimes and has failed to

15    reform himself repeatedly.  And also to reflect the fact that

16    there were real victims of this offense.  In the sense the

17    government is a victim from the destruction of the evidence,

18    the Court is a victim from the destruction of evidence, and the

19    victims of the fraud are victims from the destruction of

20    evidence.  Because the ability for the government to fully

21    investigate and prosecute and hopefully obtain restitution and

22    forfeiture from the perpetrators of the fraud is inhibited when

23    acts like this are committed.

24            THE COURT:  You're not seeking forfeiture or

25    restitution against him, are you?

1          MR. SOBELMAN:  I don't believe so because of the --

2     let me confirm.  I believe there's not forfeiture available for

3     obstruction.

4          THE COURT:  In any event, the government is not

5     seeking, as I understand it, restitution or forfeiture from

6     Mr. O'Reilly.

7          MR. SOBELMAN:  We can't seek forfeiture, and with

8     respect to restitution, we have not sought it.  It is the

9     product of plea negotiations which I won't get into here.

10          But, the short version is that the crime specifically

11     that he pled guilty to, the victimization is more attenuated

12     than if he had pled guilty to the fraud itself.

13          THE COURT:  Thank you.

14          MR. SOBELMAN:  Thank you, your Honor.

15          May I add one more point?

16          THE COURT:  Yes.

17          MR. SOBELMAN:  The government is also particularly

18     concerned here about general deterrence.  And often that's an

19     amorphous concept, but here it is a little bit more concrete.

20     The government's investigation into these telemarketing

21     operations across the country, not just in the New York metro

22     area, is ongoing and we're working with many different law

23     enforcement partners on that.  I'm not forecasting superseding

24     indictments in this particular case because we've had that

25     discussion before.

1          But, the point being that there are others that are

2    watching this case.  They're watching Mr. O'Reilly's case, that

3    are watching the other 10 or so defendants in this case to see

4    what happens.  As the government approaches other individuals,

5    the government may execute search warrants at certain

6    locations.

7          And it is important in the government's view that the

8    Court send a message to others that may be engaged in similar

9    conduct, and to others who may be aware that the government is

10   investigating similar activity that they're involved in, that

11   if they were to take a step like this, and destroy documents,

12   and conceal electronic devices, that there would be a

13   meaningful and substantial penalty for it.

14          THE COURT:  Thank you.

15          Coming in to this sentencing, I did view

16   Mr. O'Reilly -- and still do -- as on the low end of this

17   conspiracy.  So I'm not overly concerned about the general

18   deterrence point, which I think has more currency in the higher

19   levels under the conspiracy.

20          I must say coming in I was thinking of sentencing him

21   to one year, not 366 days, which was the recommended sentence.

22   But I'm willing to take a chance on him, and I intend to impose

23   366 days.

24          Mr. O'Reilly, your lawyer will explain to you that a

25   sentence of 365 days is actually more than a sentence of 366

I7D3ORES                        Sentence

days.  Because if you are sentenced to a year and a day, you

get good time credit of about seven weeks.  If you are

sentenced to a year, there is no accumulation of good time

credit.

            But I am going to sentence you to a year and a day so

you'll get that good time credit.

            I do think time served is not appropriate.  You've had

six convictions, either six or seven convictions previously.

You're building up a serious criminal history.  I understand

the prior convictions were almost certainly drug related, but

nonetheless they were criminal convictions, and you weren't

heading in a good direction by any means.

            You're still quite young.  You better change your

life, you better turn it around for your own sake, or, as your

lawyer says, you'll probably end up dead in the gutter

somewhere.

            You are a better person than your record would

indicate.  You went to college.  Go back to college and get

some education behind you.  You'll get a better job than

working for a bunch of scam artists and apparently being one.

But you are the only one who can do that.  Nobody else can do

it for you.  Step one is to stay drug free.

            But I think you need incarceration to help you stay

drug free while you're incarcerated and as a deterrence point.

And I think as an individual deterrence point as well, because

1   you are going to end up back in prison again if you violate any

2   term or condition of supervised release.  Or, for that matter,

3   if you commit any other offense having nothing to do with

4   supervised release.  You're perilously close to having your

5   life continue in the wrong direction.

6           One thing you don't need, sir, is a lecture from me,

7   that's for sure.  Because only you can do it.  I sure hope you

8   can.

9           But the intention is 366 days, because I do credit

10   what your lawyer was saying in substantial part.  You're not a

11   bad person.  You are a drug addict and you've got to change

12   that.  I'm not going to sentence you to one year.  I'm going to

13   sentence you to a year and a day.  And then the other

14   recommendations of the probation department.

15           Three years' supervised release.  You'll be on

16   supervision for three years, and I hope you'll stay clean.  No

17   fine, no restitution, no forfeiture, special assessment of

18   $100, and the standard, mandatory and special conditions set

19   forth in the recommendation of the probation department.

20           Before I formally impose sentence, Mr. Henry, did you

21   have any formal objection that you wish to lodge?

22           MR. HENRY:  No, your Honor.  But we would ask that

23   Mr. O'Reilly be housed as close to his home in New Jersey as

24   possible.

25           THE COURT:  I will make a recommendation and hereby do

1    to the bureau of prisons to house him in the Tri-State area in

2    order to facilitate visits with his family who reside in New

3    Jersey.  My assumption he is going to stay just where he is,

4    Mr. Henry.  I doubt that -- go ahead.  You can talk to each

5    other.

6            MR. HENRY:  It's fine.  I was asking Mr. O'Reilly, his

7    father lives in Florida, so I was asking if he would prefer to

8    be in Tri-State or in the Florida area, but I think he would

9    prefer to be in the Tri-State.

10           THE COURT:  All right.  I was going to say something

11   tells me the BOP is not going to move him for the balance of

12   the term from where he is now.  But if they do, you have that

13   recommendation there.

14           Government, is there any formal objection you wish to

15   lodge?

16           MR. SOBELMAN:  No, your Honor.

17           THE COURT:  Please rise, Mr. O'Reilly.

18           I hereby find that the offense level is 12, the

19   criminal history category is III, guideline range is 15 months

20   to 21 months.

21           Pursuant to the Sentencing Reform Act of 1984, it is

22   the judgment of this Court that the defendant, Thomas O'Reilly,

23   is hereby committed to the custody of the bureau of prisons to

24   be imprisoned for a term of one year and one day.  That is 366

25   days.

1          Upon release from imprisonment, Mr. O'Reilly shall be

2     placed on a term of supervised release for three years with the

3     conditions recommended by the probation department, namely

4     following mandatory:  One, he shall not commit another federal,

5     state or local crime; two, he shall not illegally possess a

6     controlled substance; three, he shall not possess a firearm or

7     dangerous weapon or destructive device; four, he shall refrain

8     from any unlawful use of a controlled substance.

9          He shall submit to one drug test within 15 days of his

10    placement on supervised release and at least two unscheduled

11    drug tests thereafter as directed by his probation officer.

12         He shall cooperate in the collection of DNA as

13    directed by his probation officer.

14         He also shall comply with standard conditions one

15    through 13 plus the following special conditions:  He will

16    participate in an outpatient treatment program approved by the

17    probation department that may include testing to determine

18    whether he has reverted to drugs the use of drugs or alcohol.

19    He will be required to contribute to the costs of services

20    based on the availability of third-party payment.  I authorize

21    the release of available drug treatment evaluations and reports

22    to the substance abuse treatment provider.

23         He has to submit his person, residence, place of

24    business, vehicle, and any other property under his control to

25    search if his probation officer has a reasonable suspicion that

1   evidence of a condition of supervised release may be found.

2   The search has to be conducted at a reasonable time and in a

3   reasonable manner.  If he fails to submit to search, that is

4   grounds for revocation of supervised release.  And he has to

5   inform all other residences of the premises that this premises

6   are subject to search.

7          Within 72 hours of his release from the custody of the

8   bureau of prisons, he has to report in person to the probation

9   office in the district in which he is released.

10          I'm not imposing a fine because I find he lacks the

11  ability to pay a fine after taking into account his modest

12  income and his limited earning ability.

13          I am not imposing restitution because there is no

14  victim pursuant to 18 U.S.C. 3663.

15          I hereby order Mr. O'Reilly to pay the United States a

16  special assessment of $100 which is due immediately.

17          I am not imposing forfeiture.

18          I understand the guidelines are advisory.  I have

19  applied all the factors in 18, United States Code, 3553(a) in

20  fixing the sentence that I believe is reasonable and

21  appropriate and sufficient, but not greater than necessary, to

22  meet the ends of the criminal justice system.

23          Mr. Sobelman, are you aware of any reason why the

24  sentence should not be imposed as I have just stated it?

25          MR. SOBELMAN:  No, your Honor.

1          THE COURT:  Mr. Henry?

2          MR. HENRY:  No, your Honor.

3          THE COURT:  I hereby order the sentence to be imposed

4     as I have stated it, and again I recommend to the bureau of

5     prisons that this defendant be housed in the Tri-State area.

6          Mr. O'Reilly, you have the right to appeal the

7     sentence.  If you cannot pay the cost of an appeal, you have

8     the right to apply for leave in forma pauperis.

9          Mr. Sobelman, was there a limited waiver of appeal

10    rights here?

11         MR. SOBELMAN:  Yes, your Honor.

12         THE COURT:  Was it 21 months or below?

13         MR. SOBELMAN:  Yes, your Honor.

14         THE COURT:  Mr. O'Reilly, I wish you to inform you

15    that in your plea agreement you agreed to waive your right to

16    appeal the sentence, and you agreed to waive your right to

17    collaterally attack sentence if I sentenced you to 21 months in

18    prison or below, and I've done that because I've sentenced you

19    to 366 days.

20         If you make a request, the clerk of the court will

21    prepare and file a notice of appeal on your behalf immediately.

22    If you do wish to appeal, all you have to do is tell Mr. Henry

23    that, and in that event, Mr. Henry, I'm directing you to file

24    the notice of appeal on behalf of Mr. O'Reilly.

25         Mr. O'Reilly, do you understand your appeal rights,

I7D3ORES                              Sentence

1   sir?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Are there any open counts or underlying

4   instruments here?

5              MR. SOBELMAN:  No, your Honor.

6              THE COURT:  Mr. O'Reilly, I know I didn't impose the

7   sentence that you were hoping for.  But I did impose a sentence

8   that I think is appropriate.  Your background, your drug

9   addiction, require a sentence that will make you understand

10  that you have to turn your life around and be aware it's less

11  than the guidelines, and it's less than the government was

12  seeking.  The government was seeking a guideline sentence for

13  you.

14             Do your time, get out, don't revert to drugs, use the

15  probation department to help you, attend the programs that they

16  set up for you, get a job.  If you can, go back to school part

17  time while you're working.

18             Stay of out of trouble.  It's your life.  It's not

19  Mr. Henry's life, it's not Mr. Sobelman's life.  Stay away from

20  the other people in this conspiracy.

21             Good luck to you, sir.  I hope not to see you again.

22  Thank you.

23             THE DEFENDANT:  Thank you.

24             (Adjourned)

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300